**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

TELLIN FONTENOT                                                CIVIL ACTION NO.

VERSUS                                                              20-8-SDD-EWD

THE BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY

<u>**RULING**</u>

This matter is before the Court on the Motion for Summary Judgment[1] by Defendant, State of Louisiana through the Board of Supervisors of Louisiana State University Agricultural and Mechanical College ("LSU").  Plaintiff, Tellin Fontenot ("Plaintiff" or "Fontenot") filed an Opposition[2] to this motion, to which LSU filed a Reply,[3] and Plaintiff filed a Sur-reply.[4] For the following reasons, the Court finds that LSU's motion should be granted.

**I.      LOCAL RULE 56**

In LSU's Reply to Plaintiff's Opposition to the Motion for Summary Judgment, LSU correctly points out that, because Plaintiff failed to comply with the requirement of Local Rules 56(c) & (f) to file an opposing statement of disputed facts, LSU's properly supported statement of undisputed facts should be deemed admitted.  The Court granted Plaintiff leave to file a Sur-Reply, to which Plaintiff attached a Statement of Disputed Facts in

---

[1] Rec. Doc. No. 25.
[2] Rec. Doc. No. 31.
[3] Rec. Doc. No. 32.
[4] Rec. Doc. No. 35.

Opposition to [LSU's] List of Undisputed Material Facts,[5] arguing that she "inadvertently failed to file" this document and "prays this Honorable Court gives leave to file" it with her Sur-Reply.[6]  By granting leave to file the Sur-Reply, the Court also granted leave to file the opposing statements late, and the Court has considered these statements.  However, Plaintiff still failed to comply with Local Rules 56(c) & (f), and LSU's proposed statements of undisputed facts shall be deemed admitted subject to the caveat explained below.

Local Rule 56(f) provides:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. **An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion**. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. **The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts**. (emphasis added).

While Plaintiff erroneously complains that LSU violated these Local Rules,[7] it is Plaintiff that violated these rules, both procedurally and substantively. Plaintiff failed to follow Local Rule 56 (c) and (f) and failed to properly respond to LSU's Statement of Uncontested Facts, which requires an opposing party to:

> submit with its opposition a separate, short, and concise statement of material facts. **The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, <u>shall support each denial or qualification by a record citation as required by this</u>**

---

[5] *See* Rec. Doc. No. 35-1.
[6] Rec. Doc. No. 35, p. 1.
[7] Plaintiff notes: "Significantly, instead of listing only material facts that are allegedly not in dispute, Defendant, in violation of Local Rules, has listed nearly every fact, material or otherwise, in its Statement of Undisputed Material Facts." Rec. Doc. No. 35-1, p. 1 n. 1. Not only is Plaintiff incorrect – a movant is not required to anticipate or guess as to what statements of fact it may believe a non-movant may admit – but Plaintiff's suggestion is disingenuous, particularly where Plaintiff has violated the rules both in untimeliness, which was forgiven, and in substance by responding in a manner that completely disregards the specific requirements of the Rules.

**rule**. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule.[8]

Plaintiff has admitted the majority of LSU's statements.  Where Plaintiff sought to qualify a statement, Plaintiff states: "Qualified. Plaintiff does not have sufficient information to admit or deny this allegation."[9]  Plaintiff does not provide how any of LSU's statements should be qualified; rather, by failing to cite to record evidence to support any qualification, Plaintiff admits she cannot carry her summary judgment burden to controvert LSU's statements with evidence by lacking "sufficient information to admit or deny" them.[10]  Plaintiff denies six of LSU's statements - numbers 38, 39, 48, 61, 62, and part of 66. As to the first five, Plaintiff states: "Denied as written.  See Plaintiff's Lawsuit," or "Denied as written: Plaintiff filed a lawsuit alleging otherwise."[11]  As to number 66, Plaintiff states: "Admitted in part and denied in part.  Plaintiff's retaliation claim was reasonably discernable via an investigation into her allegation."[12]  This is not compliant with the Local Rules, and a court is not required to search the record where a party has failed to specify the record evidence supporting the party's position.[13]

---

[8] Emphasis added.

[9] Rec. Doc. No. 35-1.

[10] An opposing statement of disputed facts is not akin to answering a complaint; Plaintiff's burden at the summary judgment stage is to present countervailing summary judgment evidence that demonstrates how the fact offered as undisputed by LSU is actually genuinely disputed.  Plaintiff's "lack of sufficient information to admit or deny this allegation" is a concession that she cannot carry her burden as to that fact.

[11] Rec. Doc. No. 35-1, pp. 3-4.

[12] *Id.* at p. 4.

[13] *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. *See Ragas v. Tenneco Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir.1992), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.' *Ragas,* 136 F.3d at 458; *Stults*, 76 F.3d at 657; *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th

Thus, because Plaintiff failed to controvert the properly supported Statement of Undisputed Facts offered by LSU, most of these facts are deemed admitted for purposes of this motion. Nevertheless, another section of this Court explained in *Braud v. Wal-Mart Stores, Inc.* that "case law recognizes that the Court can still consider record evidence to determine if there is a factual dispute."[14]  To the extent Plaintiff directed the Court in her opposition memorandum to specific, countervailing summary judgment evidence demonstrating genuine disputes of material fact as to claims that are properly before the Court, the Court will consider same.

## II.    FACTUAL BACKGROUND[15]

LSU is the flagship public university for the State of Louisiana with several campus locations, including locations in Alexandria, Louisiana ("LSU-A") and Eunice, Louisiana ("LSU-E").[16] Plaintiff was hired by the LSU-A Division of Admissions and Recruiting on March 21, 2016 as an Enrollment Specialist.[17] Plaintiff was forty-nine (49) years old on March 21, 2016, when she began her employment with LSU-A.[18] Plaintiff was hired at an annual salary of $31,000.[19]

---

Cir.1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Skotak*, 953 F.2d at 916 n. 7; *see also Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988)(it is not necessary 'that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered'); *cf. U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)("Judges are not like pigs, hunting for truffles buried in briefs.")).

[14] No. 3:17-CV-320-JWD-EWD, 2019 WL 3364320 at *4 (M.D. La. July 25, 2019)(citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998)(holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment." (citation omitted)); *Porter v. Dauthier*, No. 14-41, 2015 WL 5611647 at *8, *13 (M.D. La. Sept. 23, 2015) (deGravelles, J.)(relying on *Smith* and holding, when Plaintiff's opposition left "no doubt about his disagreement with either the basis or import of each of Plaintiff's undisputed facts," that Plaintiff would have forty-eight hours from the issuance of the ruling to comply with the Local Rule, and ultimately denying the motion for summary judgment)).

[15] The following facts are admitted or deemed admitted in this case, unless otherwise indicated.

[16] *See* www.lsua.edu; www.lsue.edu.

[17] Rec. Doc. 1-2, ¶3; Rec. Doc. No. 25-5 (Declaration of Shelly Gill), ¶6.

[18] Rec. Doc. No. 25-3 (EEOC Charge), p. 3; Rec. Doc. No. 25-4 (Fontenot Deposition), pp. 9:7-8.

[19] Rec. Doc. No. 25-11 (Personnel File), pp. 1, 34.

At that time, the Chancellor of LSU-A prioritized the recruitment and assistance of students at LSU-E, a two-year institution, with transfers to LSU-A, a four-year institution.[20] Plaintiff's position was part of that program.[21] That program, which became known as "LSUA@LSUE", included an LSU-A Admissions and Recruitment office on the campus of LSU-E. Although hired by LSU-A, Plaintiff's position was located at the LSU-E campus.[22]

The job duties of the LSU-A at LSU-E Enrollment Specialist are detailed in the job description for that Position.[23] As an employee of LSU-A, Plaintiff was expected to travel to Alexandria to attend staff meetings once a quarter, for Summer Retreats, and as needed.[24] Plaintiff was the only enrollment specialist employed by LSU-A who worked at LSU-E.[25] Further, Plaintiff was the only person with the "enrollment specialist" title and duties employed by LSU-A at any location.[26]

In November 2016, the position of Assistant Director of Admissions and Recruiting became available within the LSU-A Division of Admissions and Recruiting.[27] Plaintiff applied for the position,[28] and she met the minimum qualifications for the position.[29] Plaintiff was among those interviewed for the position by the selection committee,[30] but the selection committee unanimously decided to hire Lauren Morgan, a 24 year-old

---

[20] Rec. Doc. No. 25-5, ¶7.
[21] *Id.* at ¶8.
[22] *Id.* at ¶9.
[23] *Id.* at ¶10; Rec. Doc. No. 25-6 (LSUA at LSUE Job Duties).
[24] Rec. Doc. No. 25-5, ¶10.
[25] *Id.* at ¶12; *see also* Rec. Doc. No. 25-4, pp. 21:1-3.
[26] Rec. Doc. No. 25-5, ¶13; *see also* Rec. Doc. No. 25-4, pp. 21:4-9.
[27] Rec. Doc. No. 25-5, ¶14.
[28] *Id.* at ¶15; *see also* Rec. Doc. No. 1-2, ¶9.
[29] Rec. Doc. No. 25-5, ¶16; Rec. Doc. No. 25-7 (Job Description – Assistant Director of Admissions and Recruiting).
[30] Rec. Doc. No. 25-5, ¶18; *see also* Rec. Doc. No. 1-2, ¶9.

woman, because of her specialized experience in secondary education in Rapides Parish and connections within the Rapides Parish School Board.[31] Although Plaintiff was not selected for this position, Plaintiff received a raise to $32,000 effective on December 1, 2016.[32]

Guiyou Huang, Ph.D., became chancellor of LSU-A in January, 2017.[33] The transfer program between LSU-E and LSU-A was not a priority for Chancellor Huang, and he questioned why there was a full time Admissions employee at LSU-E.[34] Because LSU-A was not establishing the programs upon which Plaintiff was working, it quickly became hard to justify having a full time employee in the LSUA @ LSUE Office.[35] Within Dr. Huang's first two months in the Chancellorship, it became necessary to modify the LSUA@LSUE program and, correspondingly, to modify Plaintiff's job duties.[36]

During this same time period, in February and March 2017, the Registrar's office needed help.[37] Plaintiff's supervisor, Shelly Gill ("Gill") spoke with Plaintiff by phone about the need for her position in the LSUA@LSUE office, that the Registrar's Office needed help, and about changing her position and job duties to add a half-time position in the Registrar's office in Alexandria. At that time, Plaintiff accepted the modifications to her job duties.[38] On March 3, 2017, Gill requested Plaintiff's position be modified to be half-time for the duties she held in Admissions and Recruiting and half-time for assistance with transcript evaluations through the Registrar's Office.[39] This request was approved, and

---

[31] Rec. Doc. No. 25-5, ¶19.
[32] Rec. Doc. No. 25-11 (Personnel File), pp. 1, 30-31.
[33] Rec. Doc. No. 25-5, ¶20.
[34] *Id.* at ¶22
[35] *Id.* at ¶23.
[36] *Id.* at ¶24.
[37] *Id.* at ¶25.
[38] *Id.* at ¶26.
[39] *Id.* at ¶27; Rec. Doc. No. 25-8.

Plaintiff's duties were modified effective April 1, 2017.[40]

The Registrar's Office is located on the campus of LSU Alexandria and, therefore, Plaintiff was required to commute to Alexandria to perform that half of her new job duties.[41]  At the time Plaintiff was hired, it was anticipated that LSU-A would offer several programs on the campus of LSU-E for which Plaintiff was going to provide services in recruiting, admissions, financial aid, and related advising to the students;  however, as of March 3, 2017, LSU-A was only offering one such program and, therefore, these modifications were sought because Plaintiff was not needed full time.[42]

In July 2017, Plaintiff applied for the open position of Senior Associate Director of Admissions and Recruiting.[43] After inquiring about the open position, Plaintiff was encouraged to apply for the position by Gill, who was also the hiring official.[44] The open position was advertised, and a search committee was established to review and interview the candidates.[45] Out of all applicants, six were selected for telephone interviews. Of those six, three were employed at LSU-A.[46]  Plaintiff was one of three applicants who was employed at LSU-A in the Admissions Office.[47] The first round of interviews were all conducted by telephone.[48] The three applicants employed in the LSU-A admissions office were evaluated by the selection committee based on their experience, their telephone interviews, their work performance, and any leadership skills demonstrated in the

---

[40] Rec. Doc. No. 25-5, ¶29; Rec. Doc. No. 25-8.
[41] Rec. Doc. No. 25-5, ¶¶26-29.
[42] *Id.* at ¶30.
[43] *Id.* at ¶31; *see also* Rec. Doc. No. 1-2, ¶13.
[44] Rec. Doc. No. 25-5, ¶34.
[45] *Id.* at ¶33.
[46] *Id.* at ¶35.
[47] *Id.* at ¶37.
[48] *Id.* at ¶36.

admissions office.[49] Excluding follow-up questions, all six applicants were asked the same questions during their telephone interviews.[50]

After the committee conducted all six telephone interviews, it decided that Plaintiff would not be one of the three candidates extended an in-person interview.[51] That decision was based on Plaintiff's performance during the telephone interview and other employment-related interactions between members of the search committee and Plaintiff.[52] During Plaintiff's interview, when she was asked "What do you think will be the best part of this job", LSU claims she replied with the one word answer, "communication." Plaintiff was asked to elaborate, but she provided the same one-word answer, "communication."[53]

The search committee's decision to eliminate Plaintiff from contention was unanimous.[54] Of the three candidates proceeding to in-person interviews, there was one black female and one white female employed with LSU-A in the admissions office. The other candidate proceeding to an in-person interview was a white female over 40 years of age, who was a former employee of the LSU System at a different campus than LSU-A.[55] After the in-person interviews, the committee selected the white female candidate who had previously been employed by LSU. When her references were vetted, however, additional information was discovered, and she was removed from consideration. This left the two remaining candidates, both of whom worked in the LSU-A admissions office.[56]

---

[49] *Id*. at ¶38.
[50] *Id*. at ¶39; *see also* Rec. Doc. No. 25-10 (List of questions asked).
[51] Rec. Doc. No. 25-5, ¶41.
[52] *Id*. at ¶42.
[53] *Id*. at ¶43.
[54] *Id*. at ¶44.
[55] *Id*. at ¶45.
[56] *Id*. at ¶46.

The committee determined that Kaitlyn Nichols ("Nichols") would be offered the position.[57] Nichols was younger than forty when she was offered the position.[58] Nichols was qualified for the position.[59] Plaintiff and Nichols both met the minimum threshold for the Senior Associate Director of Admissions and Recruiting position, which called for a bachelor's degree from a regionally accredited institution and a preference of three to five years of experience in higher education.[60] At the time she was considered for the Senior Associate Director of Admissions and Recruiting position, Nichols had worked in the LSU-A admissions office as a recruiter since she graduated from LSU-A in May 2016. Prior to that, she worked as a student worker in various positions for her entire college career.[61] Prior to her work at LSU-A, Plaintiff's work in higher education was not focused on admissions or recruiting.[62] Plaintiff's last job before being hired at LSU-A in 2016 was as a substitute teacher for the St. Landry Parish School Board.[63]

On August 4, 2017, Plaintiff lodged a complaint with the LSU-A Title IX / EEO officer focusing on age discrimination; however, he Title IX/EEO officer for LSU-A was unable to substantiate the allegation of age discrimination.[64] During the pendency of the investigation, on September 1, 2017, Plaintiff's salary was increased to $32,240.[65] The Title IX/EEO investigation concluded on October 24, 2017.[66] On October 1, 2018, Plaintiff was awarded a merit raise and salary increase to $34,013.[67]

---

[57] *Id.* at ¶47.
[58] *Id.* at ¶48.
[59] *Id.* at ¶49.
[60] *Id.* at ¶50.
[61] *Id.* at ¶51.
[62] *Id.* at ¶52; *see also* Rec. Doc. No. 25-11, pp. 57-59 (Plaintiff's curriculum vitae).
[63] Rec. Doc. No. 25-4, (Fontenot Depo), p. 16:15-24.
[64] *See* Rec. Doc. No. 25-11, pp. 92-93.
[65] *Id.* at pp. 1, 27.
[66] *Id.* at pp. 92-93.
[67] *Id.* at pp. 1, 7.

In early 2018, as part of a refocusing of efforts by the Chancellor, Dr. Huang decided to end the 2+2 program at LSU-E and close the LSU-A office at LSU-E.[68] Plaintiff's position as the Enrollment Specialist assigned to the LSUA@LSUE Office was eliminated when the program ended, and the LSU-A office at LSU-E was closed.[69] On Monday, March 12, 2018, Dr. Eamon Halpin and Gill met with Plaintiff in her office at LSU-E.[70] During this meeting, Plaintiff was informed that the LSU-A office on the campus of LSU-E was no longer needed, and the office would close no later than April 1, 2018.[71] Rather than end Plaintiff's employment, LSU-A offered her a position in the Division of Student Engagement, maintaining the title of Enrollment Specialist with a focus on student retention.[72] Although the position offered was in a different division, the title, pay, and benefits were not affected by the transfer.[73]

LSU contends no employment decision related to Tellin Fontenot's employment in the LSU-A Division of Admissions and Recruiting was made because of her age.[74]  LSU states that many decisions, including the decision to modify Plaintiff's job duties in March, 2017, and the decision to transfer her to the Division of Student Engagement in March, 2018, were made for the express purpose of keeping her employed by LSU-A in some capacity, rather than a lay-off or termination of her position altogether.  Although the position offered was in a different division, the title, pay, and benefits were not affected by the transfer.[75]

---

[68] Rec. Doc. No. 25-5, ¶53.
[69] *Id.* at ¶54.
[70] *Id.* at ¶55.
[71] *Id.* at ¶56.
[72] *Id.* at ¶57.
[73] *Id.* at ¶58; *see also* Rec. Doc. No. 25-11, p. 9 (Offer and acceptance of position in Division of Student Engagement).
[74] Rec. Doc. No. 25-5, ¶59.
[75] *Id.* at ¶60.

Plaintiff filed a Charge of Discrimination with the EEOC on April 5, 2018.[76] Plaintiff digitally signed and dated the bottom of both pages of the EEOC Charge and, in doing so, "declare[d] under penalty of perjury that the above is true and correct."[77] Per the Plaintiff's EEOC Charge, the earliest date discrimination allegedly took place was July 21, 2017.[78] Also per the Plaintiff's EEOC Charge, Plaintiff claims age discrimination but not retaliation.[79] Plaintiff turned in her letter of resignation on November 15, 2018.[80] The EEOC issued a Notice of Right to Sue on July 24, 2019.[81]

On October 23, 2019, Plaintiff filed this lawsuit in state court, claiming LSU discriminated against her based on her age. This claim was filed within one year of Plaintiff's resignation and 90 days from the Notice of Right to Sue. Plaintiff's suit was brought under both the federal Age Discrimination in Employment Act (ADEA)[82] and the Louisiana Age Discrimination in Employment Act (LADEA)[83] pursuant to the Louisiana Employment Discrimination Law (LEDL).[84] LSU removed this action to this Court based on federal question jurisdiction and now moves for summary judgment on all claims.

Generally, LSU argues that: (1) the State cannot be sued under the ADEA; (2) Plaintiff's LADEA claim is prescribed; (3) Plaintiff's retaliation claim is likewise prescribed; (4) Plaintiff's constructive discharge claim is also prescribed; (5) Substantively, Plaintiff has failed to demonstrate the existence of genuine issues of material fact for trial and has failed to present a *prima facie* case for any of her claims.

---

[76] Rec. Doc. No. 25-3, p. 3.
[77] *Id*. at pp. 3-4.
[78] *Id*. at p. 3.
[79] *Id*.
[80] Rec. Doc. No. 25-11, p. 6. Rec. Doc. No. 1-2, ¶19.
[81] Rec. Doc. No. 25-3, p. 1.
[82] 29 U.S.C. § 623(a)(1).
[83] La. R.S. 23:311.
[84] La. R.S. 23:301, *et seq.*

11

In her Opposition, Plaintiff fails to respond to LSU's argument regarding the federal ADEA; thus, any claims brought under the ADEA are abandoned.  Plaintiff concedes she is no longer asserting an age discrimination claim for failure to promote,[85] and in her Sur-Reply, Plaintiff states that LSU has failed to show it is entitled to summary judgment on her "retaliation claim or for workplace harassment," but then she also states that she is "only asserting LADEA claims of retaliation and constructive discharge."[86]

With these concessions in mind, the Court will address only the LADEA claims of retaliation and constructive discharge/workplace harassment.

## III.   LAW AND ANALYSIS

### A.  Summary Judgment Standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[87] The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact.[88]  A court must deny the motion for summary judgment if the movant fails to meet this burden.[89]

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[90] This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his

---

[85] Rec. Doc. No. 31, p. 1 n. 2.
[86] *Id.* at pp. 1-2.
[87] Fed. R. Civ. P. 56.
[88] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).
[89] *Id.*
[90] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted).

claim.[91] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[92]

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.[93] The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.[94] Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party.[95]

### B. Exhaustion/Notice

Discrimination claims brought under the LEDL are subject to a one-year prescriptive period.[96] "This one-year prescriptive period commences to run from the day injury or damage is sustained."[97] This period is suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission, but no suspension "shall last longer than six months."[98]

Under federal law, a private plaintiff must exhaust administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court.[99] Generally, Title VII's enforcement provisions require that an EEOC charge must be filed within 180 days after the alleged unlawful employment practice has

---

[91] *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).
[92] *Anderson*, 477 U.S. at 249 (citations omitted).
[93] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[94] *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).
[95] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).
[96] La. R.S. 23:303(D).
[97] *King v. Phelps Dunbar, L.L.P.*, 98-1805 (La. 6/4/99), 743 So.2d 181, 187.
[98] La. R.S. 23:303(D).
[99] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1).

occurred.[100]   However, in a "deferral state," such as Louisiana, a claimant has an extended, 300-day period to file an EEOC charge.[101]

Similarly, Louisiana Revised Statute 23:303(C) provides in relevant part:

A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action **shall give the person who has allegedly discriminated written notice** of the fact at least thirty days before initiating court action, shall detail the discrimination, and both parties shall make a good faith effort to resolve the dispute prior to initiating court action.[102]

Moreover, in *Dyess v. Damann*, the Louisiana Fourth Circuit Court of Appeal affirmed a district court's ruling from the bench that:

The statute is very clear. [Louisiana Revised Statutes] 23:303(C) says, a plaintiff who believes he or she has been discriminated against or intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action and shall detail the alleged discrimination... The letter that purports to be that notice does not comply with the statute.... **The failure to comply with the statute is fatal**.[103]

This Court has held that, "[b]efore filing suit under the LEDL, a plaintiff must give the proposed defendants written notice of the alleged discrimination and his intent to sue at least thirty days before filing suit."[104]   The filing of an EEOC charge of discrimination satisfies the notice requirement.[105]   In *Bowie v. Hodge*,[106] the Eastern District Court of Louisiana held:   "'Prior to filing a lawsuit under the Louisiana anti-discrimination statute, a plaintiff must give the proposed defendant written notice that she believes she has been

---

[100] 42 U.S.C. § 2000e-5(e)(1).
[101] *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).
[102] Emphasis added.
[103] No. 12-1799 (La. App. 1 Cir. 4/26/13) 2013 WL 1791036, *1 (emphasis added).
[104] *Vidrine v. East Baton Rouge Parish Communications District*, No. 18-00538-BAJ-EWD, 2019 WL 1303193, *3 (M.D. La. Mar. 21, 2019)(citing *Martin v. Winn-Dixie Louisiana, Inc*., No. 13-CV-00682-JWD-SCR, 2015 WL 1281943 (M.D. La. Mar. 20, 2015)).
[105] *Id.* (citing *Martin*, 2015 WL 1281943).
[106] No. 20-2441, 2021 WL 53312, *8 (E.D. La. Jan. 6, 2021).

discriminated against at least 30 days before initiating court action.[107] [T]he filing of an EEOC charge of discrimination satisfies this notice requirement,' **but only as to the discrimination alleged in the EEOC charge**."[108]   The Western District Court of Louisiana has also held that the "[f]ailure to comply with Section 303(c) renders the un-noticed claims subject to dismissal without prejudice."[109]

Because "Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws[,]"[110] the following jurisprudence and analysis applies to Plaintiff's LEDL claims in determining whether Plaintiff complied with the LEDL's written notice requirement.

"The Fifth Circuit has observed that '[o]ne of the central purposes of the employment discrimination charge is to put employers on notice of "the existence and nature of the charges against them."'" [111] An EEOC charge must be "'in writing under oath or affirmation,' must sufficiently identify the parties, and must generally describe the action or practices that are the basis of the complaint."[112] "Federal district courts within Louisiana, including this Court, have found that administrative remedies were not exhausted only when the plaintiff failed to 'check the box' **and** allege any facts supporting

---

[107] *Id.* (quoting J*ohnson v. Hosp. Corp. of Am.*, 767 F. Supp. 2d 678, 700 (W.D. La. 2011); *see* La. Rev. Stat. § 23:303(C)).

[108] *Id.* (quoting *Johnson*, 767 F. Supp. 2d at 700)(emphasis added).

[109] *Kern v. Ingevity Corp.*, No. 15-cv-2694, 2017 WL 4679460, *3 (W.D. La. Oct. 16, 2017)(citing *e.g., Dunn v. Nextel So. Corp.*, 207 F.Supp.2d 523, 524 (M.D. La. 2002); *Stubberfield v. Offshore*, No. 15-2339, 2016 WL 2855480, *2 (E.D. La. May 16, 2016)).

[110] *King v. Phelps Dunbar, L.L.P.*, 98–1805 (La. 6/4/99), 743 So.2d 181, 187.

[111] *Clark v. Auger Services, Inc.*  443 F.Supp.3d 685, 701 (M.D. La. 2020)(quoting *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003)(quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984))).

[112] *Id.* (quoting 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.12(b)).

the retaliation claim."[113]  Further, in *Galarza v. Ochsner Health System, Inc.*,[114] this Court noted that "[s]everal courts have recognized that constructive discharge and retaliation claims are distinct from discrimination claims."[115]

LSU argues that all remaining LADEA claims are unexhausted, prescribed, and/or not pled.  Plaintiff's response to LSU's arguments on exhaustion and prescription is that she is the master of her Complaint,[116] and, although

> Plaintiff may have indicated that the latest act of discrimination occurred on April 4, 2018 and/or failed to check the "retaliation box" on her EEOC charge, the scope of Plaintiff's complaint was not limited by what she alleged or failed to allege on her EEOC charge, but rather by the scope of the investigation which can reasonably be expected to grow out of the charge - similar to how the parties gathered information during the discovery phase of this litigation, when various material witnesses were deposed. Third, because Plaintiff's charge alleged discriminatory treatment of a continuing nature, the post-charge events were simply new manifestations of the same complaint.[117]

Turning to the contents of Plaintiff's EEOC Charge, and applying relevant law to Plaintiff's allegations, the Court finds that Plaintiff's claims of retaliation, hostile work

---

[113] *Id.* (*See, e.g.*, *Oramous v. Military Dep't of Louisiana*, No. 05-3677, 2007 WL 2344921, *2 (E.D. La. Aug. 15, 2007)(where the plaintiff did not check the retaliation box and did not mention any retaliatory conduct in the charge; therefore, the plaintiff failed to exhaust her administrative remedies); *May v. FedEx Freight Se., Inc.*, 649 F.Supp.2d 451, 456 (M.D. La. 2009)(that the plaintiff did not check the retaliation box and did not make any allegations of retaliation "confirmed" that she failed to exhaust her administrative remedies, citing to a "plethora of Fifth Circuit jurisprudence"); and *Givs v. City of Eunice*, 512 F.Supp.2d 522, 536-37 (W.D. La. May 21, 2007)(where the plaintiff checked the retaliation box but did not allege "any facts concerning retaliation" that would have put the EEOC on notice of a possible claim)(italics in original))(emphasis added).

[114] No. 12–722–JJB–RLB, 2014 WL 1431708 (M.D. La. Apr. 14, 2014).

[115] *Id.* at *7 (citing *Frazier v. Sabine River Authority Louisiana*, 509 F. App'x 370, 374 (5th Cir. 2013); *Bouvier v. Northrup Grumman Ship Systems, Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009)("We have previously recognized that discrimination and retaliation claims are distinct, and the allegation of one in an EEO [sic] charge does not exhaust a plaintiff's remedies as to the other."); *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998)(holding that a "discrimination claim is separate and distinct from [a] reprisal claim, and accordingly [must be exhausted] before seeking review in federal court."); *Harvill v. Westward Communications, LLC*, 311 F.Supp.2d 573, 585 (E.D.Tex. 2004)(holding that the plaintiff's failure to assert facts regarding constructive discharge precluded her from bringing the claim in federal court)).

[116] Rec. Doc. No. 31, p. 1.

[117] *Id.* at p. 6.

environment, and constructive discharge are not exhausted under federal law; thus, Plaintiff has likewise failed to comply with the LEDL's written notice requirement.

Although an allegation of retaliation was clearly an option on her EEOC Charge, Plaintiff selected only the boxes for race and age discrimination.[118]  Likewise the Plaintiff's explanations for the allegations in her EEOC Charge do not claim retaliation or constructive discharge. Plaintiff stated:

> I began my employment with Louisiana State University of Alexandria on March 21, 2016, most recently as an Enrollment Specialist, earning $32,000 per year.  On July 21, 2017 I applied for a promotion as Senior Associate Director of Admissions and Recruiting.  On July 25, 2017, I was called for a phone interview.  I was not selected for promotion and I feel the questions asked of me were geared to me not getting the job.  Ms. Kateline Nichols, WF, was hired.  She has less qualifications that I do.  Previously I had applied for several promotions and I had not been selected either.  The person hired are younger, white employees who have less qualifications than I do.  On March 12, 2018, I was told that my job would be eliminated and that I would need to move into another Department.  I was told this by my Supervisor, Shelley Gill, WF, and Amond Hammond, Interim Vice Chancellor of Academic Affairs.  If I did not accept the transfer I would not have a job.  I was to be the Student Engagement Retention Specialist.  On March 13, 2018, I met with Mr. Moore, BM, who was the Vice Chancellor of Student Engagement.  Mr. Moore told me if he had to advertise the job, he would not select me.  Ms. Abbey Baine, WF, 30's, and Mr. Moore would write out my new job description. Ms. Baine, was on my initial hiring committee.  They scheduled me to meet with them again on March 28, 2018.  On March 27, 2018, Ms. Gill informed me that they would be taking my computer and I was to report to my new job on April 2, 2018.  On April 5, 2018, Mr. Moore informed me that my start date would reflect March 28, 2018.  According to the company, I did not get my promotions because the committee said they had initially hired someone in my similarly protected as me.  I believe that I have been discriminated against because of my race (B) in violation of Title VII of the Civil Rights Act of 1964, as amended; and because of my age (50) in violation of The Age Discrimination in Employment Act of 19676, as amended.[119]

---

[118] Rec. Doc. No. 25-3, p. 3.

[119] *Id.* at pp. 3-4. The Court made no changes or grammatical corrections to Plaintiff's statement in the charge; it is typed as it appears in the charge.

No other EEOC documents, such as an intake questionnaire or investigation notes, have been filed into the record as summary judgment evidence, and Plaintiff has presented no evidence that the EEOC took this charge and investigated claims for retaliation, hostile work environment, and/or constructive discharge. Plaintiff never amended her EEOC Charge and never sought leave to amend her Complaint.

The Court finds that the factual allegations recited above demonstrate that Plaintiff did not assert a retaliation claim, and the allegations do not support a claim for hostile work environment or constructive discharge. The allegations only concern claims for race discrimination (not alleged in this lawsuit) and age discrimination in the failure to promote Plaintiff. There are no facts stating that she complained informally and/or formally about the discriminatory treatment from which she allegedly suffered. There are no allegations that she was teased about her age or that she was subjected to age-based discriminatory conduct that was so severe or pervasive that it affected a term or condition of her employment or made her feel compelled to resign. Moreover, these claims are not reasonably expected to grow out of the allegations set forth above. The Court finds guidance in the decisions discussed below and the jurisprudence relied upon therein.

In *Slocum v. Guardsmark, L.L.C.*, the plaintiff, a security guard, asserted a host of employment-related claims against her employer after she was allegedly constructively discharged.[120] The plaintiff filed an EEOC charge wherein she claimed that she was discriminated against on the basis of her race and was subjected to a hostile work environment; no claims of retaliation were mentioned in the charge.[121] She also claimed that black employees were repeatedly subjected to "racially motivated 'verbal

---

[120] No. 08-685, 2009 WL 3448126, *1 (E.D. La. Oct. 22, 2009).
[121] *Id.*

assaults.'"[122]  The  plaintiff  subsequently  filed  suit  and  asserted  claims  of  race discrimination, hostile work environment, and retaliation under Title VII.[123]  The defendant employer  moved  for  summary  judgment  twice,  arguing  *inter  alia*,  that  the  plaintiff's retaliation  and  hostile  work  environment  claims  were  not  exhausted  based  on  the allegations in the plaintiff's EEOC charge.[124]

The court dismissed the plaintiff's retaliation claim on the defendant's first motion for summary judgment for lack of subject matter jurisdiction and addressed the hostile work  environment  claim  on  defendant's  second  motion.[125]  The  plaintiff  offered  the following to support her hostile work environment claim:  she was effectively fired because of her race; a white co-worker used a racial epithet twice, once referencing the plaintiff, once referencing a black co-worker; she experienced communication problems with her manager; a black co-worker was subjected to further racial epithets which forced her to resign; and the defendant did not allow the plaintiff to perform site checks during her medical leave.[126]

After reviewing  the  plaintiff's EEOC charge,  the  court  held  that  it  could  not "consider Slocum's departure from Guardsmark in evaluating her claim as it was neither mentioned in her EEOC charge, nor could one reasonably expect an EEOC investigation to examine the circumstances of her departure based on her EEOC charge."[127]  Noting

---

[122] *Id.*
[123] *Id.*
[124] *Id.*
[125] *Id.* at *2.
[126] *Id.* at *2.
[127] *Id.* at *3 (citing *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008)(citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)(employment discrimination claims cannot go forward unless they are included in an EEOC charge or if an EEOC investigation based on the relevant charge would encompass such claims)).

the distinction between allegations that support a hostile work environment claim and

those that would support a constructive discharge claim, the court continued:

> The use of two racial epithets in the workplace, the sort of occurrences that
> would give rise to a hostile work environment claim, are not "like or related
> to" circumstances that would attend termination of employment, which is the
> sort of factual scenario that would typically give rise to a retaliation claim.
> *See Gates v. Lyondell Petrochemical Co.*, 227 Fed. Appx. 409, 409 (5th
> Cir.2007)(unpublished)("Plaintiff's hostile environment and unequal pay
> claims could not be expected to grow out of her EEOC discrimination charge
> **when she charged only her employer's discrete acts in terminating
> and failing to promote her**, and made no mention of a hostile work
> environment or unequal pay."); *Dorsey v. Pinnacle Automation Co.*, 278
> F.3d 830, 838–39 (8th Cir.2002) **(hostile work environment claim did not
> arise out of charges of discrete act of failure to promote based on age
> discrimination**); *Green v. LSU Health Science Ctr.*, No. 07–1819, 2008 WL
> 4861995, at *3 (W.D.La. Nov.10, 2008)(unpublished)(barring plaintiff's
> claims for racial harassment when a "fair reading" of her EEOC charge was
> that she "claim[ed] she was suspended without pay because of her race.");
> *Martin v. Kroger Co.*, 65 F.Supp.2d 516, 537–38 (S.D.Tex.1999), *aff'd* at
> 224 F.3d 765 (5th Cir.2000)(unequal pay claim did not arise out of charges
> of racial and sexual discrimination). It is therefore unreasonable to expect
> an EEOC investigation, sparked by a charge complaining about the use of
> racial epithets in the workplace, to encompass an inquiry into the
> circumstances surrounding the complainant's departure from the allegedly
> offending firm. It is even more unreasonable to expect such an all-
> encompassing EEOC investigation based on a charge detailing unrelated
> events involving third parties. This Court therefore cannot consider the
> circumstances attendant on Slocum's departure from Guardsmark in
> evaluating her hostile work environment claim. *McClain*, 519 F.3d at 274,
> quoting Sanchez, 431 F.2d at 466 ("Since 1970, the caselaw has explained
> that 'the "scope" of the judicial complaint is limited to the "scope" of the
> EEOC investigation which can reasonably be expected to grow out of the
> charge of discrimination.'"); *see also Pacheco v. Mineta*, 448 F.3d 783, 792
> (5th Cir.2006).[128]

In *Cargo v. Kansas City Southern*,[129] the district court for the Western District of

Louisiana addressed similar claims regarding exhaustion as raised in the present matter.

The plaintiff filed a lawsuit against her employer alleging a Title VII claim of hostile work

---

[128] *Id.* at *4 (emphasis added).
[129] No. 05-2010, 2009 WL 3010842 (W.D. La. Sep. 16, 2009).

environment, an Americans with Disabilities Act ("ADA") claim, and an ADEA claim.[130]

The defendant moved for summary judgment on the plaintiff's hostile work environment

claim, arguing that this claim had not been exhausted because it was not included in the

plaintiff's EEOC charge.  The plaintiff countered that "she ha[d] exhausted administrative

remedies as to her Title VII claims because her charges of class wide discrimination and

'broad disparity in terms and conditions of employment and retaliatory discipline' are like

or reasonably related to a claim of hostile work environment."[131]

> The court noted that:

> "A discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." *Turner*, 2008 WL at *8. In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." *Id*.[132]

> The court then reviewed the claims made by the plaintiff in the lawsuit versus the

claims made in her EEOC charge.

> [Plaintiff] claims in this suit that she "was subjected to a hostile work environment on the basis of race including but not limited to" the following incidents: (i) she was denied a promotion in September 2002 and May 2003, (ii) she was called "too bitchy" by Jim Canada, a white male, in an incident on October 15, 2003, where she was asking for information during a tense situation involving the release of toxins into the air of her workplace, (iii) she was given a ten day suspension for "rude and discourteous behavior" while Jim Canada was given a written reprimand and referred to anger management counseling, and (iv) she was fired on February 9, 2004 for pretextual reasons surrounding her use of company email. [Third Supp. Compl., Doc. 48, ¶ 72]. Kennedy argues her claim of hostile work environment is not exhausted because it is "like or reasonably related to" the allegations contained within her Charge of Discrimination. However,

---

[130] *Id*. at *1.

[131] *Id*.

[132] *Id*. at *2 (quoting *Turner v. St. Luke's Episcopal Health Sys.*, 2008 WL 706709 at *8 (S.D. Tex. Mar.14, 2008).

"THE PARTICULARS" section of Plaintiff's first Charge of Discrimination states simply and in its entirety:

> I was hired in May 1994. I was denied promotions to management in September 2002 and May 2003; MCS project, manager of customer service and claim agent and train dispatcher. I work as a customer service representative.

> None of these vacancies were advertised.

> I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended because of my race, Black. Blacks as a class have been discriminated against in hiring, promotions, transfers, job assignments, training, compensation, and other terms and conditions of employment.[133]

The court found that the language in the plaintiff's charge was "simply devoid of any indication that she believed she 'was subjected to unwelcome harassment' on the basis of her race."[134] Further, "Plaintiff's general reference to 'other terms and conditions of employment' is insufficient to apprise either the EEOC or KCS that she had been subjected to the specific actions and statements alleged in the Third Supplemental Complaint or that she was otherwise harassed in the workplace."[135] Finding that a hostile work environment claim would not ordinarily be expected to grow out of a reasonable investigation of the plaintiff's charge, the court granted the defendant's motion for summary judgment as to exhaustion of the hostile work environment claim.[136]

Based on the above, Plaintiff's argument that claims of retaliation and hostile work environment/constructive discharge are "simply new manifestations of the same

---

[133] *Id.* at *3.

[134] *Id.*

[135] *Id.* (citing *Cassey v. Coca–Cola Enterprises*, No. Civ. A. 05-0152, 2006 WL 3862005, *5 (W.D. La. Dec. 29, 2006)(plaintiff's reference to his employer's discrimination against blacks in "promotions, pay, demotions and other terms and conditions of employment" was not enough to notify the employer that he was also subjected to unwelcome harassment in the workplace); *see also, Otokunrin v. MBNA Technology, Inc.*, No. Civ. A. 3:03-CV-1509-G, 2004 WL 833599, *4–5 (N.D. Tex. Apr. 16, 2004)).

[136] *Id.*

complaint" is simply not the law.  Additionally, marking the box "Continuing Violation" on her EEOC charge does not suggest that a claim for retaliatory harassment would grow out of the allegations.[137]  Because Plaintiff's EEOC charge contains only allegations that would support an age discrimination failure to promote claim, which Plaintiff has abandoned, the EEOC charge does not satisfy the written notice requirement of La. R.S. 23:303(c), and the Court must dismiss these claims without prejudice as premature.[138]

## IV.    CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment[139] by LSU is GRANTED.  Plaintiff's federal claims are dismissed with prejudice.  Plaintiff's state law claims are dismissed without prejudice.  Considering the dismissal of all federal claims in this matter, unless Plaintiff presents some other basis for federal jurisdiction, any re-filing of these claims should be in state court.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 12, 2022</u>.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[137] *See Costin v. GOTECH, Inc.*, No. 16-873-SDD-RLB, 2018 WL 3451513 (M.D. La. July 18, 2018)(" Further, courts have repeatedly distinguished retaliatory termination from a harassment/hostile work environment claim. The Fifth Circuit has expressly held that the continuing violations doctrine does not apply to claims of retaliation because "retaliation is, by definition, a discrete act, not a pattern of behavior."). *Id.* at *8 (quoting *Hamic v. Harris Cnty., W.C. & I.D. NO. 36*, 184 Fed.Appx. 442, 447 (5th Cir. 2006)).
[138] The Court acknowledges that some or all of Plaintiff's LEDL claims may be prescribed; however, making that determination would require the Court to delve into the merits of Plaintiff's claims and determine what date(s) certain claims accrued. Such a determination would be inappropriate as, procedurally, these claims are not properly before the Court.
[139] Rec. Doc. No. 25.